Matter of A. WW. (2025 NY Slip Op 02377)

Matter of A. WW.

2025 NY Slip Op 02377

Decided on April 24, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 24, 2025

CV-23-1183
[*1]In the Matter of A. WW., Alleged to be a Juvenile Delinquent. Delaware County Attorney, Respondent; A. WW., Appellant.

Calendar Date:January 9, 2025

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Lynch, JJ.

Mitchell S. Kessler, Cohoes, for appellant.
Amy B. Merklen, County Attorney, Delhi, for respondent.

Pritzker, J.
Appeal from an order of the Family Court of Delaware County (Gary Rosa, J.), entered May 25, 2023, which granted petitioner's amended application, in a proceeding pursuant to Family Ct Act article 3, to adjudicate respondent a juvenile delinquent.
On December 20, 2022, respondent (born in 2006), while in the care and custody of Delaware County Department of Social Services (hereinafter DSS), was brought to Binghamton General Hospital in Broome County on a Mental Hygiene Law § 9.41 temporary hold following an incident at her foster home, during which respondent allegedly displayed a knife and threatened DSS staff. On December 22, 2022, while still in the hospital emergency room, respondent slapped a DSS caseworker. On January 24, 2023, this juvenile delinquency proceeding was commenced against respondent in Broome County for her December 22, 2022 conduct, alleging that such acts, if committed by an adult, would constitute the crime of attempted assault in the third degree.[FN1] Meanwhile, despite being psychiatrically cleared, respondent remained in the emergency room because, according to DSS, respondent's intersecting mental health conditions and cognitive deficits, as well as her history of aggression toward staff and absconding from placements, prevented DSS from finding a suitable placement.
Following a first appearance on February 2, 2023, Broome County Family Court (Young, J.) adjourned the matter for one week and directed DSS [FN2] to obtain an appropriate placement for respondent in that time so that she did not continue being held in the hospital emergency room. The court also sua sponte ordered a capacity examination pursuant to Family Ct Act § 322.1. On February 9, 2023, no placement had yet been made, and the court adjourned the matter to March 2, 2023 in anticipation of the pending examination reports and with the plan to notice various state agencies that could assist with placing respondent. Respondent was ultimately determined to have the capacity to take part in her defense, and, on March 31, 2023, a fact-finding hearing was scheduled for April 26, 2023. On the day scheduled for the hearing, however, respondent entered an admission to the charge, as contained in an amended petition. Family Court accordingly adjudicated her a juvenile delinquent, and the court transferred the proceeding to Delaware County for disposition.
Following a dispositional hearing in May 2023, Delaware County Family Court (Rosa, J.) placed respondent in the custody of the Office of Children and Family Services (hereinafter OCFS), authorized OCFS to place her in a limited secure facility for a period of 12 months and ordered that respondent not be discharged from OCFS custody before the expiration of her term of detention.[FN3] This appeal by respondent ensued.
Respondent argues that she was deprived of her right to the effective assistance of counsel, citing failures by her attorneys to move to dismiss the petition either in the furtherance of justice or based upon [*2]an alleged violation of her statutory right to a speedy fact-finding hearing. These issues are, however, rendered academic because we now dismiss the petition in the interest of justice. To that end, Family Ct Act § 315.2 (1) provides that, in a juvenile delinquency proceeding, "[a] petition or any part or count thereof may at any time be dismissed in furtherance of justice when, even though there may be no basis for dismissal as a matter of law, such dismissal is required as a matter of judicial discretion by the existence of some compelling further consideration or circumstances clearly demonstrating that a finding of delinquency or continued proceedings would constitute or result in injustice." Further, "[a]n order dismissing a petition in the interest of justice may be issued upon motion of the presentment agency, the court itself or of the respondent" (Family Ct Act § 315.2 [2]). Significantly, even where a respondent's attorney has not moved to dismiss a petition in the furtherance of justice, " 'the Family Court or this Court may do so on its own motion' " (Matter of Steven C., 93 AD3d 91, 95 [2d Dept 2012] [emphasis added], quoting Matter of Deborah C., 261 AD2d 138, 139 [1st Dept 1999]; see Matter of Cerino P., 296 AD2d 868, 868 [4th Dept 2002]; Matter of Jessie C., 164 AD2d 731, 736 [4th Dept 1991], appeal dismissed 78 NY2d 907 [1991]; see also Matter of Joshua P., 270 AD2d 272, 272 [2d Dept 2000], lv denied 95 NY2d 757 [2000]). When considering whether to invoke this "extraordinary remedy" (Matter of James JJ., 206 AD3d 1091, 1091 [3d Dept 2022]),Family Ct Act § 315.2 (1) provides factors for a court to consider when "determining whether such compelling further consideration or circumstances exist." These factors, which a court must "examine and consider, individually and collectively, [include] the following: (a) the seriousness and circumstances of the crime; (b) the extent of harm caused by the crime; (c) any exceptionally serious misconduct of law enforcement personnel in the investigation and arrest of the respondent or in the presentment of the petition; (d) the history, character and condition of the respondent; (e) the needs and best interest of the respondent; (f) the need for protection of the community; and (g) any other relevant fact indicating that a finding would serve no useful purpose" (Family Ct Act § 315.2 [1]). "At least one of these factors must be readily identifiable and sufficiently compelling to support dismissal" (Matter of James JJ., 206 AD3d at 1092 [internal quotation marks and citation omitted]).
Although we are mindful that "[d]ismissal in the furtherance of justice is an extraordinary remedy that must be employed sparingly," it is our opinion that this is one of "those rare cases where there [are] compelling factor[s] which clearly demonstrate[ ] that prosecution [resulted in an] injustice" (id. at 1092-1093 [internal quotation marks and citations omitted]). Beginning with factor (a), without diminishing [*3]the violence involved, the crime charged here, attempted assault in the third degree, a class B misdemeanor, is not serious (see Penal Law §§ 110.00, 120.00 [1]). Factor (b) also favors dismissal as the DSS caseworker was not seriously injured. Factor (c) is inapplicable. Factor (d) strongly favors respondent because her history, character and condition is, in large part, a function of a system that failed her in many ways on multiple occasions, as was noted by the Delaware County Attorney, who appeared throughout the proceeding on behalf of DSS, with whom respondent was placed. Additionally, at the time of the attempted assault, respondent was in DSS' care and custody because her mother was deceased and her grandmother, who subsequently adopted respondent, ultimately surrendered her rights.[FN4] Respondent has a reportedly low IQ and a history of mental illness which was so severe that Family Court ordered a capacity evaluation (see Family Ct Act § 322.1). Indeed, respondent had been brought to the hospital emergency room based on what was legally designed to be a temporary Mental Hygiene Law § 9.41 hold. Respondent remained in what was essentially a lock and key detention in the hospital, mostly in the emergency room, under dubious circumstances for an outrageous period of six months.[FN5]
Factor (e) also favors respondent. Respondent already had numerous strikes against her, not only her lack of a parent/guardian and her serious mental health challenges, but also a previous juvenile delinquency adjudication. This additional juvenile delinquency finding is a red flag that will undoubtedly hinder opportunities and could cause difficulty for respondent should she seek mental health assistance in the future. Simply put, respondent needs no additional baggage, especially not baggage stemming from a juvenile delinquency petition that was admittedly filed and continued because of the difficulty of placing her in a suitable setting, which leads to factor (g),[FN6] which is, in our opinion, the strongest factor favoring dismissal. As stated by the County Attorney at the initial proceeding on the petition, Delaware County DSS didn't "want [respondent] to be a [juvenile delinquent], but the system itself is failing. We have no other option than to make her a [juvenile delinquent] and put her with OCFS and cross our fingers that she gets the treatment she needs. [Respondent] has been in [the emergency room at the hospital] for a long time and, honest to god, I just feel like she's been failed at every turn." It is clear from the record that Family Court, petitioner, DSS and even the attorney for the child found themselves in a very difficult situation where they felt that a juvenile delinquency proceeding was a means to an end as it appeared to be the only vehicle to suitably place respondent.[FN7] Despite this difficulty in placing respondent, however, it is not proper to leverage a juvenile delinquency proceeding in order to obtain a suitable placement for a hard-to-place [*4]child who is mentally ill or otherwise disabled. Nevertheless, this proceeding served its dubious purpose and respondent has paid the price several times over. She has completed her OCFS placement and is no longer in DSS custody. Under these circumstances, allowing the juvenile delinquency adjudication to remain at this juncture serves no useful purpose. Instead, this case should serve as a beacon to those empowered to find legitimate and safe psychiatric placements for those in need, such as respondent, so this scenario is not repeated.
Egan Jr. and Lynch, JJ., concur.
Aarons, J. (concurring).
I agree with the majority's bottom line — respondent's juvenile delinquency adjudication must be reversed and the petition dismissed. We part ways only on the reasons that compel our shared conclusion. Put plainly, counsel should have done what the majority does now — move to dismiss the petition in furtherance of justice (see Family Ct Act § 315.2). Under the circumstances, "no reasonable defense counsel would have failed to" make that motion (People v McGee, 20 NY3d 513, 518 [2013]; see generally New York State Bar Association, Committee on Mandated Representation, 2021 Revised Standards for Providing Mandated Representation §§ I-7 [a] [i], [ii]; I-8 [a], [c]), and the record demonstrates "the absence of strategic or other legitimate explanations" for that failure (People v Rivera, 71 NY2d 705, 709 [1988]). More importantly, the record reveals that counsel at the fact-finding stage did not pursue any sort of defense or lodge any objections at all (compare Matter of Jeffrey V., 82 NY2d 121, 127 [1993]; Matter of Dominick H., 9 AD3d 520, 522 [3d Dept 2004]). Accordingly, I would hold that respondent was deprived of the effective assistance of counsel.
The relevant facts are basically as the majority recites them. Respondent (born in 2006) was a child in the care and custody of the Delaware County Department of Social Services (hereinafter DSS). On December 20, 2022, respondent allegedly used a knife to threaten a DSS staff member at her agency-operated foster home. The Delaware County Sheriff's Department brought respondent to Binghamton General Hospital in neighboring Broome County pursuant to Mental Hygiene Law § 9.41. Under that provision, law enforcement officers may "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others" (Mental Hygiene Law § 9.41 [a]). Among other things, officers may transport the person to a comprehensive psychiatric emergency program (hereinafter CPEP) for an emergency assessment and immediate observation, care and treatment (see Mental Hygiene Law § 9.41 [a]; see generally Mental Hygiene Law § 9.40).
Two days later, on December 22, 2022, respondent was not in the hospital's CPEP but instead still in the hospital's emergency room when she reportedly struck a DSS caseworker multiple times in the face and back[*5]— the alleged conduct giving rise to this proceeding. Just over a month later, on January 24, 2023, respondent was still boarding in the hospital emergency room when this proceeding was commenced in Broome County to adjudicate her a juvenile delinquent based upon her alleged conduct on December 22. The petition alleged that respondent's conduct, if committed by an adult, would constitute the crime of attempted assault in the third degree, a class B misdemeanor (see Penal Law §§ 110.00, 110.05 [8]; 120.00 [1]). A similar delinquency proceeding was instituted in connection with the alleged December 20 incident 10 days later, on February 2, 2023 — the date the parties first appeared before Broome County Family Court on the instant petition.
By the time that first appearance occurred, respondent had been boarding in the hospital's emergency room for about six weeks but had not been accepted to the hospital's CPEP. According to a hospital social worker, respondent had been seen by a psychiatrist during that time, who "psychiatrically cleared" her, leaving no medical reason for respondent to remain at the hospital. The problem was that DSS — which had custody of respondent — would not take her out of the hospital, as she could not return to her agency-operated home, and DSS had not located a suitable secure program to house her.
The extended duration of respondent's boarding moved Family Court (Young, J.) to have — in the court's own words — "a mild freak out," asserting that "two months" of boarding in a hospital emergency room amounted to "abuse." So disturbed was the court that it announced this proceeding would be dismissed in furtherance of justice if DSS did not find a suitable placement for respondent before the next scheduled appearance a week later. That placement did not occur, but the court — which had ordered a competency evaluation — did not dismiss the petition on its own initiative. Respondent's counsel likewise did not move to dismiss the petition in furtherance of justice. Respondent continued to reside at the hospital, where she was twice subjected to physical and medicinal "restraints."
At some point, respondent was accepted into the hospital's CPEP and kept there securely, "unable to leave . . . without an access key card." Even CPEP was not a suitable long-term boarding option. After months of living at the hospital, an April 21, 2023 report by a DSS staff member indicated respondent was "unable to be redirected or calmed down and was pacing in [a] hallway" when she struck a CPEP nurse in the face. After that incident, the hospital requested to increase respondent's psychiatric medication.
The petition was later amended to remove certain allegations and change others. Broome County Family Court characterized this amendment as part of a "settlement," though the amended petition appears to have revised allegations that were unsupported by the caseworker's written deposition taken the day of the December 22, 2022 incident. On April [*6]26, 2023, respondent entered an admission to the conduct alleged in the amended petition. Respondent remained at the hospital while the proceeding was transferred to Delaware County Family Court (Rosa, J.) for disposition. Following a dispositional hearing, during which respondent was represented by different counsel, that court rejected a guardianship application filed by respondent's family member and, instead, placed respondent into the custody of the Office of Children and Family Services with directions to place respondent in a limited secure facility for 12 months.
"In juvenile delinquency and person in need of supervision proceedings, where the child is the respondent, the attorney for the child must zealously defend the child" (22 NYCRR 7.2 [c]; compare 22 NYCRR 7.2 [d] ["In other types of proceedings, where the child is the subject, the attorney for the child must zealously advocate the child's position" (emphasis added)]). Of course, counsel will not be deemed ineffective where "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that [counsel] provided meaningful representation" (Matter of Gregory AA., 20 AD3d 726, 726-727 [3d Dept 2005] [internal quotation marks and citations omitted]). Here, respondent admitted to the conduct alleged rather than exercise her right to a fact-finding hearing, and that admission is the same as a guilty plea (see Matter of Daniel Richard D., 27 NY2d 90, 97 [1970], appeal dismissed & cert denied 403 US 926 [1971]). In the context of a guilty plea, "a defendant has been afforded meaningful representation when he or she receives an advantageous plea and nothing in the record casts doubt upon the apparent effectiveness of counsel" (People v Phillip, 200 AD3d 1108, 1110 [3d Dept 2021] [internal quotation marks and citations omitted]).
Applying those principles, counsel's ineffectiveness comes into focus. Counsel entered a general denial at the first appearance because he had not yet spoken with respondent. Yet, despite admitting to that lack of communication, counsel signaled he would not put the presentment agency to its proof when he told Family Court he was hopeful he could "work out something" with the Broome County Attorney "on the attempted assault" (cf. Matter of Mark T. v Joyanna U., 64 AD3d 1092, 1093 [3d Dept 2009]). His motivation for undermining the general denial he entered for respondent was not to secure the best possible outcome for her, but so that "it will all get sent back to Delaware County" — even though petitioner suggested such a transfer might be detrimental to respondent because Delaware County Family Court would not treat her with the same "tact." In that same exchange, the court declared that respondent was "not going to sit in the emergency room anymore." Counsel responded, "[W]e have to put [respondent] somewhere and I don't have a problem. I guess she has to go to detention" (see generally Family [*7]Ct Act § 301.2 [3], [4], [5]).
At an appearance on March 31, 2023, the Broome County Attorney indicated that respondent's counsel had been contacted about a settlement offer in exchange for her admission; the details of that offer are not disclosed in the record or briefs. Counsel was unable to relay that offer to respondent. This is because, even though counsel had been representing respondent for two months at that point and attended her competency evalutations, he was not on the hospital's list of respondent's approved contacts. Respondent entered her admission at the next appearance on April 26, 2023. Nothing in the record or briefs discloses what advantage, if any, counsel obtained for respondent in exchange for waiving her right to a hearing and admitting to the conduct alleged in the amended petition. And at no point did counsel advocate for dismissal in furtherance of justice or for any other relief, even though respondent had been confined to the hospital for almost half a year before the proceeding was transferred.
In my view, counsel's inaction and above-quoted statements "cast[ ] doubt upon the apparent effectiveness of counsel" (People v Phillip, 200 AD3d at 1110 [internal quotation marks and citations omitted]). The lack of a bargained-for admission points to "the absence of meaningful adversarial representation" (Matter of Jeffrey V., 82 NY2d at 126 [emphasis added]). In other words, this is not a case where counsel failed to make one dispositive motion but provided "otherwise competent representation" (People v Bovee, 221 AD3d 1549, 1550 [4th Dept 2023], lv denied 41 NY3d 982 [2024]). Rather, assessing counsel's failure to move for dismissal in furtherance of justice in the context of his overall performance and the totality of circumstances at the time of his representation (see Matter of Jeffrey QQ., 37 AD3d 986, 987 [3d Dept 2007]; Matter of Gregory AA., 20 AD3d 726, 726-727 [3d Dept 2005]), respondent was deprived of the effective assistance of counsel.
Petitioner's assertion that an appropriate secure placement could only be obtained by adjudicating respondent a juvenile delinquent does not alter my view. However well-intentioned, a juvenile delinquency adjudication is necessarily against respondent's interests (see generally 2021 Revised Standards for Providing Mandated Representation § I-8). Petitioner took a position adverse to respondent by supporting that adjudication — indeed, she personally prosecuted the petition against respondent at the dispositional hearing. Petitioner justified her adversity by lamenting the broken system that failed to provide respondent with the right resources to avoid becoming a juvenile delinquent while keeping herself and the community safe. That same broken system, however, does not legitimize counsel's choice to acquiesce to a juvenile delinquency adjudication in exchange for access to resources petitioner admits respondent needed to function (compare 22 NYCRR 7.2 [c], with 22 NYCRR 7.2[*8][d]).
Nor should counsel have acquiesced to DSS leaving respondent in the hospital, to say nothing of counsel's suggestion that Broome County Family Court's only other option was to send her to detention. Indeed, those options are not options at all; for all practical purposes, respondent was detained at the hospital, forced to live there against her will under secure conditions throughout this proceeding, despite having been brought there on an emergency basis, where she was subjected to restraints and the prospect of being medicated into docility (see Mental Hygiene Law §§ 9.40, 9.41). Family Court even observed that respondent's months-long confinement to the hospital's emergency room was abuse, and still counsel did not point out that respondent was being held in detention in almost every way but name, did not object to 28 days' worth of adjournments that prolonged respondent's confinement and made no discernable effort to end it (see 2021 Revised Standards for Providing Mandated Representation §§ I-7 [a] [i], [ii]; I-8 [a], [c]).
Predictably, Delaware County Family Court disposed of the petition by ordering respondent into a 12-month limited secure placement. Respondent had already been living under secure conditions at the hospital for five months, so respondent ultimately received an effective 17-month secure placement — well beyond the three-month-maximum sentence available for adults convicted of a class B misdemeanor like attempted third-degree assault (see Penal Law § 70.15 [2]; 110.05 [8]; 120.00 [1]). In light of these circumstances, I am not persuaded there was any legitimate or strategic reason for counsel to abstain from making a motion to dismiss the petition — especially a motion Broome County Family Court all but invited counsel to make.
Which brings us full circle — counsel could have sought dismissal of the petition in furtherance of justice at any time, or make any other motion or objection, but he chose to do nothing. In making that choice, counsel fell short of fulfilling his duty to "zealously defend" respondent (22 NYCRR 7.2 [c]) and did not provide her with meaningful representation. Accordingly, I would reverse the order adjudicating respondent a juvenile delinquent for having been deprived of her right to the effective assistance of counsel. Further, given that respondent completed her term of detention and she is now over 18 years old, maintaining this proceeding any further serves no practical purpose, making dismissal of the petition appropriate.
Garry, P.J. (dissenting).
I strongly dissent, finding no fault or error by any of the legal professionals faced with the untenable situation they encountered here, which would not have been meaningfully addressed by a dismissal of the subject juvenile delinquency petition. Further finding that the statute relied upon by the majority does not fit these circumstances, I see no cause to dismiss now. Respectfully, the only proper disposition of this appeal is an affirmance[*9].
Although I differ in my view of the seriousness of respondent's underlying violent conduct, my colleagues have set forth the essential factual circumstances presented on this appeal. Indisputably, the Delaware County Department of Social Services (hereinafter DSS) boarded respondent — a child entrusted to its care and custody — in a hospital emergency department for a prolonged period following resolution of her acute psychiatric crisis. After respondent was brought to the hospital, DSS attempted to find safe and suitable placement for her, within this state and surrounding states, but received only denials of its many referrals. Unfortunately, this scenario — i.e., a hospital stay while awaiting out-of-home placement — is not unique, and this appeal showcases the challenges confronting medical and social services providers, as well as our courts. There continues to be a profound scarcity of placement resources for children with complex needs, such as the intersecting developmental, socioemotional and behavioral needs of respondent (see Aysha Jawed et al., Homeless in the Hospital: A Call to Strengthen Multidisciplinary Care for Children Awaiting Out-of-Home and Psychiatric Placements, Frontiers in Pediatrics [2023]; Emma J.B. Hackel et al., Avoidable Discharge Delays: Children Waiting in Hospitals Deserve More Attention, Hospital Pediatrics [2023]; see also Kathleen D. Snow et al., Pediatric Mental Health Boarding: 2017 to 2023, Pediatrics [Mar. 2025]).
We can all agree that an emergency room is no place for the long-term care and treatment of children. In response to the discomfort of these challenging, and systemic, circumstances, my colleagues in the majority attempt to shoehorn this matter into a dismissal in the furtherance of justice. Family Court initially had a similar reflexive response. However, what is not meaningfully addressed in the other writings here is that Family Court expressly changed its position, apparently based upon further practical consideration and following extended consultation with the parties and others. Stating that it had come to better understand the circumstances, the court, rather than dismissing this legitimate and well-supported proceeding — which it was empowered to do, without any motion — actively marshalled resources for respondent. Left unanswered in the other writings is the essential underlying dilemma: had Family Court dismissed the petition, where was this teenager to go? This is the real problem posed in this case; there was no safe place for her.
There was no practical benefit to dismissal in the interest of justice then, and I cannot agree that justice is furthered by dismissal now. As the majority notes, Family Ct Act § 315.2 commands that all the applicable statutory factors are to be considered, both individually and collectively, before concluding that some compelling circumstance clearly demonstrates that a finding of delinquency would constitute injustice (see Family Ct Act § 315.2 [1]). [*10]The relevant statutory factors here include "(a) the seriousness and circumstances of the crime; (b) the extent of harm caused by the crime; . . . (d) the history, character and condition of the respondent; (e) the needs and best interest of the respondent; (f) the need for protection of the community; and (g) any other relevant fact indicating that a finding would serve no useful purpose" (Family Ct Act § 315.2 [1]). This Court has held that dismissal pursuant to Family Ct Act § 315.2 is "an extraordinary remedy" and cautioned that it "must be employed sparingly" (Matter of James JJ., 206 AD3d 1091, 1091 [3d Dept 2022] [internal quotation marks and citations omitted]).
Addressing these factors, I first note that this Court has found that assault in the third degree is a serious crime within the meaning of Family Ct Act § 315.2 (see Matter of James JJ., 206 AD3d at 1092). Although it appears that petitioner believed it could not ultimately prove the physical injury necessary to support a non-attempt charge, it is entirely clear from the record that the charged conduct was in fact quite serious. Without elaborating on the facts, respondent's actions, and the resulting harm to the caseworker victim, far exceed the description as a "slap." Respondent's chaotic childhood experience merits sympathy — as is undoubtedly the case for so many children in the state's custody. Nonetheless, her long history of violent and threatening behavior should not be readily overlooked. In short, respondent's repeated and frighteningly violent conduct was the reason why suitable placements could not be obtained. That violence had resulted in a prior finding of delinquency, and also included substantial self-harm — violence inflicted upon herself. I thus cannot agree that her history, character, needs or best interests favors dismissal. The majority briefly finds that the statutory factor concerning the need for protection of the community does not fall in respondent's favor. It must be said that the record before this Court is replete with evidence that respondent posed a serious danger to others. Ultimately, the majority finds the final catchall factor in the statute to be the strongest factor favoring dismissal; I find it to be the weakest. The fact that DSS, when pressed to explain respondent's status as a boarder, acknowledged that this proceeding could enable safe placement does not, in my view, undermine the proceeding or render the grounds dubious. Although many children involved in juvenile delinquency matters might be better served by treatment in the form of other interventions, that does not render resort to a legitimate and substantiated juvenile delinquency petition inappropriate.[FN8]
This matter stands in stark contrast to those cases where appellate courts have, upon their own motion, dismissed a juvenile delinquency petition in the furtherance of justice (see Matter of Steven C., 93 AD3d 91 [2d Dept 2012] [involving a trespass committed by a high school student [*11]who hopped a fence on his lunch hour to purchase food at a nearby bagel shop]; Matter of Deborah C., 261 AD2d 138 [1st Dept 1999] [involving a 12-year-old who scratched her little brother's name into a subway seat with a stone while accompanied by her mother and two other young children]; see also Matter of Cerino P., 296 AD2d 868 [4th Dept 2002] [involving sexual intercourse between "willing" teenagers of approximately the same age where only the male participant was charged]). In fact, these circumstances much more closely resemble a recent case where this Court found that the trial court abused its discretion in utilizing this extraordinary remedy in the face of the respondent's violence (see Matter of James JJ., 206 AD3d at 1092-1093 [rejecting the trial court's emphasis on the misdemeanor nature of the offense, particularly in the face of the respondent's escalating violence]; see also Matter of Carlief V., 121 AD2d 640 [2d Dept 1986] [reversing dismissal based upon the respondent's "sad family history" and because of lack of injury to the victim]; Matter of Kwane M., 121 AD2d 635 [2d Dept 1986] [holding that, although the community may be adequately protected from a juvenile at the point in time that the petition is dismissed, that is not by itself compelling to support dismissal where the respondent shows a propensity toward violent behavior]).
I further reject the arguments raised by respondent on appeal, including those embraced by the concurrence. Initially, given that respondent's ineffective assistance of counsel claim does not implicate the voluntariness of her admission of wrongdoing, whether it survives the admission is questionable (see Matter of Angel V., 79 AD3d 1137, 1137 [2d Dept 2010]; cf. Matter of Ismaeel A., 24 AD3d 543, 543 [2d Dept 2005]; Matter of Raymond WW., 291 AD2d 682, 683 [3d Dept 2002]; but see Matter of Daniel TT., 137 AD3d 1515, 1516 [3d Dept 2016]; see generally People v Hansen, 95 NY2d 227, 230 [2000]; People v Petgen, 55 NY2d 529, 534-535, 535 n 3 [1982]; Matter of Daniel Richard D., 27 NY2d 90, 97 [1970], cert denied 403 US 926 [1971]). Even assuming that it does, it remains her burden to show that counsel did not provide meaningful representation (see Matter of Jeffrey V., 82 NY2d 121, 126 [1993]; see People v Baldi, 54 NY2d 137, 147 [1981]; see also People v Parson, 27 NY3d 1107, 1108 [2016]), which requires that she demonstrate "the absence of strategic or other legitimate explanations" for counsel's alleged failings (People v Rivera, 71 NY2d 705, 709 [1988]; see People v Benevento, 91 NY2d 708, 712-713 [1998]).
There are two points underlying respondent's ineffective assistance claim. First, I do not agree with respondent that success on a motion to dismiss in the furtherance of justice was a "virtual certainty" in light of Family Court's initial invitation for same. In addition to the court's expressly changed position, discussed above, it again bears noting that, had the court continued to believe that [*12]such dismissal was warranted, no motion by counsel was necessary (see Family Ct Act § 315.2 [2]). Thus, even without being privy to the many off-the-record conversations concerning this issue, it is clear that, by the time a motion for dismissal in the furtherance of justice would have been made, it would not have had the likelihood of success that respondent asserts. Declining to make a motion with little to no chance of success is a legitimate choice (see People v Stultz, 2 NY3d 277, 287 [2004]; Matter of Lucas Y., 223 AD3d 1057, 1060 [3d Dept 2024], lv denied 41 NY3d 909 [2024]). A motion based on the alleged denial of respondent's right to a speedy fact-finding hearing also would have been unsuccessful as the record establishes that respondent did not object to the first two adjournments, resulting in a delay between the initial appearance and the commencement of the fact-finding hearing of less than 60 days (see Family Ct Act § 340.1 [2]; Matter of Joseph CC., 234 AD2d 852, 853 [3d Dept 1996]; see also Matter of Daniel TT., 137 AD3d at 1516; see generally Matter of Willie E., 88 NY2d 205, 209-210 [1996]). Moreover, it is clear from the face of the record that there was good cause for the initial adjournment and special circumstances for the second — to enable petitioner to find suitable placement and to obtain the reports from the court-ordered capacity examination, respectively (see Matter of Jamar A., 86 NY2d 387, 391 [1995]; Matter of Frank C., 70 NY2d 408, 414-415 [1987]; see also Family Ct Act § 322.1 [1], [2]; cf. Matter of George T., 99 NY2d 307, 313 [2002]).[FN9]
In sum, as I cannot criticize the attempts to address this terribly sad situation, I cannot justify signaling, even now, that there was some error in the proceeding. A societal failure, yes; a failure of legal process, no. I would therefore affirm.
ORDERED that the order is reversed, on the facts and in the exercise of discretion in the furtherance of justice, without costs, petition dismissed, and matter remitted to the Family Court of Delaware County for further proceedings pursuant to Family Ct Act § 375.1.

Footnotes

Footnote 1: A juvenile delinquency petition was filed on February 2, 2023 in Delaware County regarding the December 20, 2022 incident.

Footnote 2: Although not a party, DSS has appeared throughout this proceeding.

Footnote 3: While this appeal was pending, in January 2024, Family Court granted a motion by respondent to vacate as illegal that aspect of its order prohibiting respondent from obtaining an early discharge from OCFS custody.

Footnote 4: The record does not contain information about respondent's father.

Footnote 5: The record does not reveal the legal basis for respondent's lengthy detention pursuant to article 9 of the Mental Hygiene Law, after being psychiatrically cleared, and it is uncontested that there was no order of detention issued by Family Court.

Footnote 6: Factor (f) does not favor dismissal given respondent's history.

Footnote 7: While we do not take a position specifically regarding the effectiveness of the attorney for the child, we do find that certain points raised by our concurring colleague also favor dismissal under this factor.

Footnote 8: In light of respondent's history, I am unpersuaded that this second juvenile delinquency adjudication will unduly hinder her or compromise her eligibility for mental health services in the future.

Footnote 9: The only other argument raised on appeal, concerning the legality of the terms of respondent's detention, has been rendered moot by vacatur of the challenged provision (cf. People v White, 208 AD3d 1391, 1391-1392 [3d Dept 2022]; People v Stabb, 207 AD3d 948, 949 [3d Dept 2022]; see generally Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713-714 [1980]).